**Anthony F. CIFERNI and Joanne Ciferni**

v.

**STANDARD OIL CORP., B.P. Oil, Inc., and Broad Bench Spray Rentals**

v.

**SOMERS CONSTRUCTION CO.**

v.

**C.H. HEIST CORP.**

v.

**UNION CHEMICALS, and Union Oil Co.**

v.

**SUNOLIN CHEMICAL CO.**

Civ. No. 87–4112.

United States District Court, E.D. Pennsylvania.

June 20, 1989.

---

122

Albert L. Deutsch, Philadelphia, Pa., David L. Deratzian, for plaintiffs.

Gollatz, Griffin, Ewing & McCarthy by Sharon M. Erwin, Philadelphia, Pa., for Union Chemicals and Union Oil Co.

W. Stanley Sneath, E. Michael Keating, III, Philadelphia, Pa., for Soho Oil Co.

Eileen V. Dooley, Philadelphia, Pa., for Broadbench Spray Rentals.

Jerrold P. Anders, Philadelphia, Pa., for Somers Const. Co.

Kenneth F. DeMarco, Post & Schell, P.C., Philadelphia, Pa., for C.H. Heist Corp.

MEMORANDUM

LOUIS H. POLLAK, District Judge.

Defendant Sohio Oil Company ("Sohio") (erroneously identified in plaintiffs' complaint as Standard Oil Corporation and B.P. Oil, Inc.), has moved for summary judgment based on plaintiffs' alleged failure to file a complaint within the applicable statute of limitations. Additional defendant Broadbent's Spray Rentals (erroneously identified in plaintiffs' complaint as "Broad Bench Spray Rentals"), third-party defendant Somers Construction Company, and fourth-party defendant C.H. Heist Corporation have joined in this motion.

Mr. Ciferni was an employee of Henkels & McCoy, Inc. ("Henkels"), a company that subcontracted to Sohio to clean equipment at Sohio's Marcus Hook refinery. Plaintiffs claim that during the approximately four weeks in January 1985 that Anthony Ciferni cleaned equipment at Sohio, he inhaled from the cleaning materials allegedly dangerous levels of glycol that damaged his heart. Mr. Ciferni had no previous history of cardiac problems. After suffering pain after work on February 1, 1985, Mr. Ciferni was hospitalized and diagnosed as having suffered a myocardial infarction. On February 3, 1985, he had a second heart attack and underwent cardiac catheterization and a double bypass procedure.

Plaintiffs filed their personal injury com-

plaint in state court on June 2, 1987;[1] defendants removed the action to this court. Sohio now moves for summary judgment, alleging that the complaint is barred by the two-year statute of limitations applicable to this personal injury action pursuant to 42 Pa.C.S.A. § 5524(2). Sohio contends that, as early as March 19, 1985, over two years before filing his complaint, Mr. Ciferni was aware of the alleged connection between his inhalation of glycol and his heart attack. Plaintiffs contend that Mr. Ciferni was informed of this connection only in June or July of 1985. Plaintiffs' reply, at 2.

Because the cause of a heart attack is not necessarily readily apparent, the statute of limitations period may well commence after the date of injury. "The rule in Pennsylvania is that the limitations period begins to run from the time that the plaintiff knows or reasonably should know the cause of his injury." *Bayless v. Philadelphia National League Club*, 579 F.2d 37, 39 (3d Cir.1978). Pennsylvania law further breaks down a plaintiff's knowledge into "three independent phases" that must be known or knowable to the plaintiff before the limitations period commences: "(1) knowledge of the *injury;* (2) knowledge of the *operative* cause of the injury; and (3) knowledge of the *causative relationship* between the injury and the operative conduct." *O'Brien v. Eli Lilly & Co.*, 668 F.2d 704 (3d Cir.1981) (quoting *Volpe v. Johns–Manville Corp.*, 4 P.C.R. 290 (Phila. C.P.1980)).

By the time of Mr. Ciferni's heart attacks in early February 1985, plaintiffs were aware of both the injury and the circumstances under which Mr. Ciferni had been exposed to glycol at Sohio's refinery.

The sole issue upon which this summary judgment motion rests is the factual question of when Mr. Ciferni knew or should have known of the alleged causative relationship between glycol and his injury.

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.Proc. 56(c). The dispute about a fact is "genuine" if there is sufficient evidence for a jury to return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

■ Sohio presents the following evidence to support its contention that Mr. Ciferni in fact knew of the alleged causal connection of glycol to heart damage by March 19, 1985.[2] On March 18, 1985 Mr. Ciferni's employer, Henkels, filed an Employer's Report of Occupational Injury or Disease. Sohio Motion, Exh. A. The two-page form reports an occupational injury for the purposes of obtaining workers' compensation. Question 32 asks:

*How Did Injury Occur?* (Describe Fully the Events Which Resulted in Injury or Disease. Tell What Happened and How It Happened. Name Any Objects or Substances Involved and Tell How They were Involved. Give Full Details on All Factors Which Led or Contributed to Injury or Disease.)

An attached page to the form provides the answer to question 32, stating in full:

Mr. Ciferni said he did not know the cause of the other workers' attacks, *id.*, Sohio argues that due diligence would have required plaintiff to have investigated and discovered the alleged causality prior to July 1985. When asked if he made efforts to determine the cause of his injury between February 1 and June 26, 1985, Mr. Ciferni stated that he only relied on Michael Malvey (apparently his counsel for his worker's compensation claim), from whom he sometimes "wouldn't hear from ... for a year." Ciferni Depo., Sohio Motion, Exh. G.

---

1. Inexplicably, plaintiffs state that they filed their state court action on July 14, 1987, Plaintiffs' Reply, at 2, and Sohio misstates the date as June 14, 1987.

2. Sohio also argues that Mr. Ciferni was on notice, if not actually aware, of a possible connection as early as February 1985. At that time, boilermakers visiting Mr. Ciferni at the hospital told him "three or four other people died, same job, heart attacks ... from the week I had the heart attack until the following two weeks." Ciferni Depo., Sohio Motion, Exh. F. Although

Injury occurred by the environment in which I was working. I was working in the Naptha Unit, and was working with Glycol, both products are very dangerous. I was not informed of these dangers.

Sohio argues that this answer reveals that as of March 18, 1985, Mr. Ciferni knew and believed that naptha and glycol created a dangerous environment that caused his injury.[3] Although this answer appears in the first person and Mr. Ciferni is identified as the "person making out this report" in blank 11 of the form, Mr. Ciferni's signature does not appear on the form. Instead, the report—to be signed by "person in 11 above"—is signed by Pat Hassinger, an employee no longer with Henkels.[4] At his deposition, Mr. Ciferni stated in reference to the report that he didn't "remember doing this at all," and while it was "possible" that he had provided the answer to Question 32, he did not remember. Ciferni Depo., Sohio Motion, Exh. C, at 121. Mr. Ciferni also raised the possibility that a union person may have completed the form. *Id.* Mr. Ciferni did mention receiving assistance on his compensation claim from "Mike" (Michael Malvey, Esq.) sometime between February and June 1985. Ciferni Depo., Sohio Motion, Exh. G.

■ Sohio also presents a transcript of an alleged March 19, 1985 telephone call between Mr. Ciferni and James Walsh, an employee of Liberty Mutual Insurance Co. who investigated the claim for workers' compensation benefits for Mr. Ciferni. Sohio Motion, Exh. B. Plaintiffs contend that the entire transcript is inadmissible because there is no evidence authenticating or identifying it as required by Federal Rule of Evidence 901(b)(6) governing telephone conversations. This rule requires "evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if ... circumstances, including self-identification, show the person answering to be the one called." Fed.R.Evid. 901(b)(6)(A).

The affidavit of Mr. Walsh accompanying the transcript of the call at Exhibit B sufficiently identifies the initialed copy of the transcript as that of a recorded call held on March 19, 1985. The transcript itself then identifies the date, time, and telephone number called. This telephone number (and the address given by the answering party) corresponds to that listed for Mr. Ciferni in the Chester County phone book for 1985. Sohio Sur-reply, Exh. A. Moreover, the person answering the phone identified himself as "Anthony Ciferni." Sohio Motion, Exh. B, at 1. Plaintiffs do not explain how this identification is deficient, nor do they present any evidence indicating that the transcript is improper or that Mr. Ciferni did not speak with Mr. Walsh. Mr. Ciferni stated in his deposition that he did not remember the conversation, but that the voice on the tape "sounds like me." Ciferni Depo., Sohio Motion, Exhs. D & E. As it appears from the evidence that Exhibit B is an authentic transcript of a conversation between Mr. Walsh and Mr. Ciferni, I will consider the conversation as evidence bearing on Sohio's motion for summary judgment.

Sohio contends that the conversation reveals that Mr. Ciferni already knew of the connection between his injury and the worksite by the date of the conversation, in which he concluded that "[t]his had to happen from there." Sohio Motion, Exh. B. at 11. After some discussion of Mr. Ciferni's

---

**3.** Plaintiffs object that this statement must be disregarded as inadmissible hearsay under Federal Rule of Evidence 802. However, Sohio has presented the statement not as proof of the truth of the matter asserted, but rather as evidence of the knowledge of the writer—allegedly Mr. Ciferni—at the time. *See* Fed.R.Evid. 801(c).

**4.** Plaintiffs' challenge to the authenticity, and therefore admissibility, of the document under Federal Rule of Evidence 901 is overcome by the identification provided in the affidavit of

Gordon H. Phillips. Sohio Reply, Exh. B. Mr. Phillips, an Insurance Manager who maintains Henkels' workers' compensation files, identifies Ms. Hassinger's signature on the document. He also states that Ms. Hassinger completed the form "from information provided to her by a person having personal knowledge of the facts, most likely Mr. Ciferni." Although it authenticates the document, Mr. Phillips' affidavit sheds little light on Mr. Ciferni's actual involvement— if any—in its preparation.

work at Sohio's refinery and of his heart attack, Mr. Walsh asked Mr. Ciferni, "What do you think caused it. Any idea?" Mr. Ciferni replied, "I think it was environment. . . . Like you know, with stuff like, glycol, or the naptha, something to do with that." *Id.* at 10. He added that he was not supplied with a fume mask, because "I guess they didn't feel you know, they are supposed to tell us when there is a dangerous situation. But they didn't." *Id.* at 11. Aside from failing to recall the conversation, plaintiffs do not now contest the existence or content of this conversation. Sohio contends that the conversation reveals Mr. Ciferni's awareness that inhaling glycol or naptha fumes was dangerous, and that he attributed his injury to breathing those chemicals.

 Federal Rule of Evidence 56(e) provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.Proc. 56(e). Other than to contest the admissibility of Sohio's evidence, plaintiffs provide no rebuttal—through affidavits, testimony, or other means—to Sohio's factual claim of Mr. Ciferni's awareness of, and belief in, a connection between inhalation of glycol at work and his heart attack as early as March 1989.

Plaintiffs' sole substantive response is an allegation that "[i]n July of 1985, Plaintiff was informed by his then treating physician, a Dr. Nicholes [sic] DePace, that his heart condition was related to the exposure to glycol." Plaintiffs' Reply, at 2. The implication that plaintiffs are claiming that Dr. DePace provided their *first* knowledge of the alleged cause of Mr. Ciferni's heart attack is elaborated in the complaint, which alleges that "[p]laintiff first became aware of the cause of his myocardial infarction on or about June 26, 1985," and that June 26, 1985 was a date on which Dr. DePace examined the plaintiff. Complaint, ¶¶ 23, 12.[5] Despite these pleadings, plaintiffs provide no evidence of the date or dates on which Dr. DePace examined Mr. Ciferni, and the nature of such examination.

 Even overlooking plaintiffs' failure to meet the evidentiary requirements of Rule 56(e), the fact that a physician may have advised Mr. Ciferni of a cause for his illness in June or July of 1985 that Mr. Ciferni had discussed with someone else in March of 1985, does not, without more, cast doubt on Mr. Ciferni's earlier awareness.[6] It is undisputed that on March 19, 1985 Mr. Ciferni made statements directly drawing a connection between glycol and his heart attack. The compensation claim filed earlier on his behalf also suggests that Mr. Ciferni had drawn this connection, although it is at best circumstantial evidence of knowledge that is not unambiguously attributable to Mr. Ciferni.

I conclude that on this record there is no genuine factual issue as to Mr. Ciferni's knowledge, by March 19, 1985, of his injury, of his exposure to glycol at Sohio's refinery, and of the relationship of glycol to heart injury. Therefore, the statute of limitations began to run by that date. As plaintiffs did not bring their action in the Court of Common Pleas until over two years and two months after the statutory

5. The complaint does not refer to any July 1985 meeting between Dr. DePace and Mr. Ciferni, nor does the reply to the motion refer to any such contact in June 1985. It appears, however, that plaintiffs' references to June and July meetings with DePace refer to the same event.

6. A medical expert's opinion may be the first event from which a plaintiff gains any knowledge of a causal relationship between his injury and its cause. However, there is no talismanic quality of a medical diagnosis that supports a general legal presumption that a plaintiff could not have knowledge of the cause of an injury prior to medical confirmation. *Compare O'Brien v. Eli Lilly & Co.,* 668 F.2d 704 (3d Cir.1981) (limitations period ran from when plaintiff with DES read an article in *Newsweek,* not when she discovered three years later that her mother had taken the drug) *with Bayless v. Philadelphia National League Club,* 579 F.2d 37, 40 (3d Cir.1978) (limitations period could not start running absent evidence that "plaintiff reasonably suspected or should have reasonably suspected" cause).

period began to run, I will grant Sohio's motion for summary judgment and accordingly release all defendants and impleaded defendants.